UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN JAVIER MEDEROS CRUZ (A-216-688-622)<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY ICE DETENTION CENTER<br>Respondent. | No. 1:26-cv-08042-DC-CSK<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner Adrian Javier Mederos Cruz (A-216-688-622), a citizen of Cuba proceeding without counsel, entered the United States June 2021 and was granted conditional parole. In August 2026, U.S. Immigration and Customs Enforcement ("ICE") officers detained petitioner again after a minor criminal arrest. Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] This habeas action concerns petitioner's re-detention. For the reasons that follow, the Court recommends that the petition be granted and petitioner be immediately released.

## I. FACTUAL BACKGROUND

Petitioner entered the U.S. in June 2021 with his family when he was a minor. (ECF Nos. 7 at 12, 14; 9 at 2.) U.S. immigration officials apprehended and released petitioner at least once shortly after entry. (See ECF No. 7 at 14 (showing a U.S. Customs and Border Protection

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

("CBP") apprehension near Brownsville, Texas on June 8, 2021, and an ICE apprehension near Tampa, Florida on June 21, 2021).) At some point after entry, petitioner was granted conditional parole. (See ECF No. 7 at 14 (noting that petitioner had a "CP visa (PUB INTEREST PAROLEE, HDQTRS AUTH)").) Petitioner's mother included petitioner as a derivative in her asylum application, which she filed in May 2022. (ECF No. 9 at 3, 5.) In January 2023, the U.S. Department of Homeland Security ("DHS") initiated removal proceedings against petitioner. (ECF No. 7 at 14.) On July 8, 2023, ICE encountered and released petitioner at the Lewiston, New York port of entry, noting his conditional parole status. (Id.) On August 25, 2026, petitioner was arrested and charged under Florida Statute § 901.11, contempt of court, for not answering a summons related to an arrest for driving without a license. (Id. at 20.) On August 28, 2026, ICE took petitioner into custody. (Id. at 12-14.)

## II. PROCEDURAL BACKGROUND

On September 30, 2026, petitioner filed the petition for writ of habeas corpus. (ECF No. 1.) On October 19, 2026, respondent filed an answer and motion to dismiss. (ECF No. 7.) Petitioner filed an opposition to the motion to dismiss on October 29, 2026. (ECF No. 9.) Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court. The provisions of Rule 4, which are applicable to a petition filed pursuant to 28 U.S.C. § 2241, provide in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." The Advisory Committee Notes to Rule 4 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to respondent's motion to dismiss, or after an answer to the petition has been filed.

## IV. DISCUSSION

Petitioner claims that his current detention violates the Due Process Clause of the Fifth Amendment.[2] Respondent asserts that petitioner is lawfully detained under U.S.C. § 1226(a), which entitles him to a bond hearing and that petitioner must exhaust administrative remedies before seeking habeas relief. (ECF No. 7.) The Court agrees that 8 U.S.C. §1226(a) governs petitioner's current detention.

### A. Exhaustion

Respondent is correct that noncitizens, like petitioner, who are detained pursuant to § 1226(a) are entitled to a bond hearing. When a noncitizen is taken into immigration custody under § 1226(a), ICE makes an initial custody determination, which may include setting bond. 8 C.F.R. § 236.1(c)(8). A detainee may then request a bond redetermination hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1). At that hearing, the detainee bears the burden of demonstrating to the immigration judge that the detainee warrants release on bond. See In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). The immigration judge must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." Id. (citing Matter of Patel, 15 I. & N. Dec. 666 (BIA 1976)). The immigration judge may also weigh other discretionary factors. Id. If the immigration judge

---

[2] Petitioner also claims his detention violates the Fourth Amendment and the Immigration and Nationality Act. (ECF No. 1 at 6.) Because the Court is recommending release on due process grounds, the Court need not address petitioner's additional claims.

denies bond, the detainee may appeal to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 236.1(d)(3). If the BIA affirms, the detainee may seek habeas relief in federal district court. Leonardo v. Crawford, 646 F.3d 1157, 1159-61 (9th Cir. 2011). While district courts have jurisdiction to review bond determinations for constitutional error, Rodriguez Diaz v. Garland, 53 F.4th 1189, 1209 (9th Cir. 2022), district courts may not review discretionary judgments regarding the detention and release of noncitizens in removal proceedings under § 1226(a). 8 U.S.C. § 1226(e). Further, an individual detained pursuant to § 1226(a) may request an additional bond hearing upon a showing of materially changed circumstances. See 8 C.F.R. § 1003.19(e).

28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004). However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Because exhaustion is not required by statute, it is not jurisdictional. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50, 54-55 (1995) (citing Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir. 1987)). If a petitioner has not properly exhausted his claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court." Id. "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (internal citation and quotation marks omitted). However, the Court may waive the exhaustion requirement when administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile. Laing, 370 F.3d at 1000-01 ("[D]istrict court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved for instances

in which no other judicial remedy is available.”).

The Court concludes that the prudential exhaustion requirement should be waived. Given that petitioner was allowed to remain free from immigration detention for five years after his apprehension and release, applied for asylum, and has minimal criminal history, this Court finds that petitioner may suffer irreparable injury without immediate judicial relief.

**B. Due Process**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. “It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.” Foucha v. Louisiana, 504 U.S. 71, 80 (1992). “[T]he Due Process Clause applies to all ‘persons’ within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.” Zadvydas, 533 U.S. at 693. “The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary.” Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner’s due process claim “in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.” Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep’t of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of parole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, “[c]ourts have resolved the issue by comparing the specific

conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

Here, petitioner has a protected liberty interest in remaining out of custody where he lived in the United States for five years after his release. During his five years of living in the United States, petitioner applied for asylum and obtained work authorization. (ECF No. 9 at 9.) Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For five years, petitioner remained free from immigration detention despite multiple apprehensions before his August 2026 detention. Meanwhile, petitioner sought asylum and was granted work authorization. (ECF No. 9 at 9.) The five-year duration of petitioner's freedom

from immigration detention elevates and underscores his interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. July 24, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.").

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Though ICE arrested petitioner after a criminal arrest, respondent does not specifically contend that petitioner is or was a flight risk or a danger to the community. No neutral arbiter has determined that petitioner is a flight risk or a danger to the community, such that detention would be warranted.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondent's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner was entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). Respondent points to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to

relief based on a violation of his procedural due process rights.

## V. CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted on procedural due process grounds.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on ground one.

2. Respondent's motion to dismiss (ECF No. 7) be DENIED.

2. Respondent be ordered to IMMEDIATELY release petitioner Adrian Javier Mederos Cruz (A 216-688-622) and be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondent has custody of petitioner's possessions or documents (e.g., identification, passport, work permit, Social Security card, etc.), respondent shall return those to petitioner at the time of release.

3. Respondent be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that physical custody is legally justified. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

4. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven (7) days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven (7) days** after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 19, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

11/mede8042.157.2241.imm.release